IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY HULSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-154-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 81-92). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2020, the alleged onset date. (TR. 83). At step two, the ALJ determined Ms. Hulsey suffered from the following severe impairments: rheumatoid arthritis, degenerative disc disease of the lumbar spine, and obesity. (TR. 83). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 85).

At step four, the ALJ concluded that Ms. Hulsey retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally stoop, kneel, crouch, climb ramps, and climb stairs, while she can never crawl or climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger with her bilateral upper extremities, and she can have no exposure to unprotected heights.

(TR. 86).

With this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work. (TR. 91). As a result, the ALJ concluded, at step four, that Ms. Hulsey was not disabled. (TR. 92).

**III.   ISSUE PRESENTED**

On appeal, Ms. Hulsey alleges error in the ALJ's failure to properly evaluate medical opinions from Plaintiff's primary care physician, Dr. Seth Switzer. (ECF No. 11:11-23).

**IV.   STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.   THE ALJ'S DUTY TO EVALUATE MEDICAL OPINIONS**

The Social Security regulations define a "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and

whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in her abilities to:

- Perform physical demands of work activities;
- Perform mental demands of work activities;
- Perform other demands of work, such as seeing, hearing, or using other senses; and
- Adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1520c. In doing so, the ALJ need only articulate how persuasive she finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements.

4

*See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

## VI. ERROR IN THE ALJ'S EVALUATION OF A MEDICAL OPINION FROM DR. SWITZER

Plaintiff alleges legal error in the ALJ's evaluation of a medical opinion Dr. Switzer. (ECF No. 11:11-23; 15:1-5). The Court agrees.

### A. Dr. Switzer's Opinion and the ALJ's Related Evaluation

As noted by the ALJ, the medical evidence in this case establishes that Plaintiff suffers from severe rheumatoid arthritis for which she has taken oral Methotrexate and Remicade, a biologic infusion. *See* TR. 361, 365-366, 371, 378, 379. On April 6, 2020, Dr. Switzer stated that these medications rendered Ms. Hulsey immunocompromised and noted that Plaintiff has "direct patient contact" with her work at the hospital and that "[t]he current situation with COVID 19 is worrisome." (TR. 502). On that day, Dr. Switzer wrote a letter, stating:

> My patient Tammy Hulsey suffers from a condition for which the treatment renders her immunocompromised. I think it would be in her best interest to avoid direct patient contact in the emergency department given the current situation with COVID 19.

(TR. 387). On May 15, 2020, Dr. Switzer stated that he recommended that Ms. Hulsey "avoid direct patient interaction." (TR. 505). On July 27, 2020, Dr. Switzer again discussed Plaintiff's immunocompromised situation and stated that she should not return to work in the ER because she had a "high risk" of being exposed to COVID-19. (TR. 515). Finally,

5

on September 21, 2020, Dr. Switzer wrote that Plaintiff "needs to continue to avoid direct patient contact secondary to [her] immunocompromised state." (TR. 517).

The ALJ acknowledged Dr. Switzer's opinion, but rejected it, stating:

> The record contains multiple statements from the claimant's provider, Seth Switzer, M.D., stating that she should avoid the direct patient contact required for her prior work in the emergency room due to her immunocompromised status, and she therefore could not return to her job Acknowledging that the Covid-19 Pandemic is a novel situation, the issue of the claimant's medication-induced immunocompromised status is one of *should* rather than *could*. In other words, the general purpose of this analysis is to determine whether the claimant has the mental and physical *ability* to perform her past relevant work or other jobs in the national economy despite the limitations related to her impairments –not whether or not she *should* do so. The central issue is capability, regardless of external socioeconomic issues or natural occurrences that affect the availability of jobs consistent with the residual functional capacity. Dr. Switzer's opinions therefore comment on the availability of suitable positions rather than the claimant's actual ability to perform her past work, and given that he did not comment on any other physical or mental limitations affecting the claimant's ability to perform work activities, his conclusions are largely irrelevant to the analysis required for this decision, and I found them unpersuasive.

(TR. 91) (internal citations omitted).

### B.     Error in the ALJ's Evaluation of Dr. Switzer's Opinion

Plaintiff argues that the ALJ rejected Dr. Switzer's opinion without the requisite legal analysis. (ECF No. 14:19-22). The Court agrees.

As discussed, the ALJ was required to explain how persuasive he deemed Dr. Switzer's opinion by specifically discussing the factors relating to "supportability" and "consistency." *See supra*. As an initial matter, however, the Commissioner argues that the statements from Dr. Switzer do not qualify as "medical opinions." (ECF No. 14:5-6). According to Defendant, Dr. Switzer's statements qualify as "other medical evidence,"

6

which are not subject to the same level of analysis required by "medical opinions." (ECF No. 14:5-6). In doing so, the Commissioner focuses on Dr. Switzer's April 6, 2020 statement, wherein he wrote that it would be in Plaintiff's "best interest to avoid direct patient contact." (ECF No. 14:6). According to Defendant, Dr. Switzer's "subsequent statements" "all flowed from and continued that same premise." (ECF No. 14:6). The Commissioner also states: "[t]he ALJ acknowledged Dr. Switzer's statements but observed that they were not medical opinions within the meaning of the Act[.]" (ECF No. 14:6). The Court disagrees with Ms. Kijakazi's arguments.

As an initial matter, the ALJ did not "observe" that Dr. Switzer's statements were not medical opinions—his verbiage in the decision indicates otherwise. The ALJ stated: "Dr. Switzer's *opinions* therefore comment on the availability of suitable positions rather than the claimant's actual ability to perform her past work[.]" (TR. 91) (emphasis added). Like the ALJ, the Court likewise concludes that Dr. Switzer provided a medical opinion, rather than "other opinion evidence."

The regulations define "other medical evidence" as "including judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). When evaluating "other medical evidence" the ALJ is not required to consider the "medical opinion" factors listed above. *See supra*; *see M.H. v. Kijakazi*, No. 1:21-CV-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) ("The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency."). The Court finds it debatable regarding whether Dr. Switzer's April 6, 2020

7

statement constituted a "medical opinion." However, the Court need not resolve that issue because the undersigned unambiguously concludes that Dr. Switzer did render a "medical opinion" when he stated that Plaintiff "needs to avoid direct patient contact secondary to immunocompromised state." (TR. 517); see *Anderson v. Apfel*, 100 F.Supp.2d 1278, 1287 (D. Kan. May 31, 2000) (noting that physician's recommendation that claimant would "need to" lie down four to five times during the day constituted a "medical opinion."). Dr. Switzer is a medical source who mandated that Plaintiff avoid direct contact with patients due to her immunocompromised state—the statement fulfills the necessary requisites of a "medical opinion." *See supra*, 20 C.F.R. § 404.1513(a)(2). The Commissioner argues that even if Dr. Switzer's statement was considered a "medical opinion," any error in failing to properly evaluate the same was harmless because "[a]ggregated together, Dr. Switzer's statement would only establish a limitation due to her immunocompromised state lasting approximately eight months, less than the continuous 12 months required to prove that she was under a disability under the Act." (ECF No. 14:7). The Court rejects this argument, because Dr. Switzer never placed a time restraint on his limitations as temporary. *See, eg.*, TR. 502, 505, 515, 517.

As a "medical opinion," the ALJ was required to evaluate the persuasiveness of the opinion, specifically explaining how she assessed the factors of consistency and supportability. *See supra*. The ALJ failed in this regard and remand is therefore appropriate for proper consideration of the same in accordance with the regulatory guidelines outlined above.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on October 12, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE